1  Jessica L. Blome (Cal. Bar No. 314898)
   Lily A. Rivo (Cal. Bar No. 242688)
2  Richard A. Brody (Cal. Bar No. 100379)
   GREENFIRE LAW, PC
3  2748 Adeline Street, Suite A
4  Berkeley, CA 94703
   Ph/Fax: (510) 900-9502
5  Email: jblome@greenfirelaw.com
         lrivo@greenfirelaw.com
6        rbrody@greenfirelaw.com
7  *Attorneys for Plaintiff U.S. Right to Know*
8

9  **UNITED STATES DISTRICT COURT**

10 **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| U.S. RIGHT TO KNOW, a California Non-Profit Corporation, | Case No.: 3:26-cv-01293 |
| Plaintiff, | **EXHIBIT A** |
| vs. | *To* |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Defendant. | Freedom of Information Act, 5 U.S.C. § 552 *et seq.* |



**U.S. RIGHT TO KNOW**
*Pursuing truth and transparency for public health*

July 16, 2025

George W. Bush Presidential Library
c/o FOIA Coordinator, National Archives and Records Administration
2943 SMU Blvd, Dallas, TX 75205

    **Submitted via email to gwbush.library@nara.gov**

    **RE:     Freedom of Information Act request**

Dear FOIA Officer,

This is a request under the Freedom of Information Act (5 U.S.C. § 552). I respectfully request copies of records in the holdings of the George W. Bush Presidential Library, *via* the National Archives and Records Administration (NARA), concerning the George W. Bush administration's 2001 decision to reject the proposed Verification Protocol to the Biological Weapons Convention (BWC).

Please search for internal correspondence (including emails), memoranda, briefings, reports and other textual documents authored by or addressed to the following officials between Jan. 20, 2001, and Dec. 31, 2001:

- George W. Bush, President
- Dick Cheney, Vice President
- Condoleeza Rice, National Security Advisor
- Colin Powell, Secretary of State
- Donald Rumsfeld, Secretary of Defense
- Donald Mahley, Deputy Assistant Secretary of State
- Susan Koch, Deputy Assistant Secretary of Defense
- Edward Lacey, Assistant Secretary of State

- John Bolton, Under Secretary of State
- Carol R. Kurtz, Deputy Assistant Secretary of Defense
- Stephen Hadley, Deputy National Security Advisor

Please identify and produce copies of only those records referenced above that contain any of the following keyword search terms:

- "BWC"
- 'Verification Protocol"
- "Biological Weapons Convention"
- "biological arms control"
- "biosecurity strategy"
- "WMD treaty"
- "Review Conference"

To assist your search, please consider the following search string:

("George W. Bush" OR "Dick Cheney" OR "Condoleeza Rice" OR "Colin Powell" OR "Donald Rumsfeld" OR "Donald Mahley" OR "Susan Koch" OR "Edward Lacey" OR "John Bolton" OR "Carol R. Kurtz" OR "Stephen Hadley")
AND
("BWC Verification Protocol" OR "Biological Weapons Convention" OR "Ad Hoc Group" OR "biological arms control" OR "biosecurity strategy" OR "WMD treaty verification" OR "BWC Review Conference")
AND
(date:2001)

If your search system allows fielded queries, please search the subject and body text for those keywords and names. We request that you disclose these documents and materials as they become available to you, without waiting until all the documents have been assembled. If documents are denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. Give the number of pages in each document and the total number of pages about this request, and the dates of documents withheld. We request that excised material be "blacked out" rather than "whited out" or cut out and that the remaining non-exempt portions of documents be released as provided under the Freedom of Information Act.

Please advise of any destruction of records and include the date of and authority for

2

such destruction.

**REQUEST FOR FEE WAIVER**

FOIA was designed to provide citizens with a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *NARA v. Favish*, 541 U.S. 157, 171 (2004) quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773- 74 (1989) (internal quotation and citations omitted). To provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as U.S. Right to Know access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and *non-profit public interest groups*." *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information ... ." 132 Cong. Rec. S. 14298 (statement of Senator Patrick Leahy).

**I. U.S. Right to Know Qualifies for a Fee Waiver.**

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

Thus, the NARA must consider six factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "the operations or activities of the Federal government," (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the

subject, (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. *Id*. § 2.107(1)(2), (5) whether a commercial interest exists and its magnitude, and (6) the primary interest in disclosure. As shown below, U.S. Right to Know meets each of these factors.

### A. The Subject of This Request Concerns "The Operations and Activities of the Government."

The subject matter of this request concerns the operations and activities of multiple federal agencies under President George W. Bush's administration. This request is about the United States' withdrawal from international negotiations among participants of the Biological Weapons Commission over a proposed protocol calling for inspections of certain laboratory and research facilities concerning the development of or research into bioweapons and pathogens of pandemic potential.

This FOIA will provide U.S. Right to Know and the public with crucial insight into the activities that led to the U.S. withdrawal from BWC which are directly related to current national and international policy in place today that allows for a lack of regulation over bioweapons research that directly impacts public health, safety and security threats – a specific and identifiable activity of the government, and in this case, the executive branch. *Judicial Watch*, 326 F.3d at 1313 ("[R]easonable specificity is all that FOIA requires with regard to this factor") (internal quotations omitted). Thus, U.S. Right to Know meets this factor.

### B. Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.

The requested records are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public.

Disclosure of the requested records will allow U.S. Right to Know to convey to the public information about the historical government activities in relation to modern bioweapons policy, including a recent Executive Order that restricts risky laboratory research issued in May 2025 by President Donald Trump. Once the information is made available, U.S. Right to Know will analyze it and present it to the general public in a manner that will meaningfully enhance the public's understanding of this topic.

Thus, the requested records are likely to contribute to an understanding of the US Government's operations and activities.

### C. Disclosure of the Requested Records Will Contribute to a Reasonably Broad Audience of Interested Persons' Understanding of the U.S. involvement in the lack of international oversight of bioweapons development

The requested records will contribute to public understanding of how the Bush Administration's actions relate to the current regulations critiqued by many scientists, government officials, and citizens as being too lax to protect public safety. Some point out that the lack of oversight may have contributed to a failure to regulate activities that resulted in various laboratory research that posed risks to the public, including the COVID-19 pandemic. The origins of COVID-19 remain unknown. The Trump White House unveiled in 2025 a public website alleging that a "Lab Leak" is the "True Origins of COVID-19," which followed risky gain-of-function research at the Wuhan Institute of Virology that was partially funded by U.S. agencies.[1] As explained above, the records will contribute to public understanding of this topic.

Activities of the Bush Administration generally, and specifically its activities to withdraw from the BWC verification protocol, and in turn, how that set the stage for risky research worldwide, including potentially the origins of the COVID-19 pandemic, are areas of interest to a reasonably broad segment of the public. Interest in this topic is heightened today, given its potential relevance to the origins of the COVID-19 pandemic. U.S. Right to Know will use the information it obtains from the disclosed records to educate the public at large about this topic. *See W. Watersheds Proj. v. Brown*, 318 F. Supp.2d 1036, 1040 (D. Idaho 2004) (finding that "WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also how ... management strategies employed by the BLM may adversely affect the environment").

Through U.S. Right to Know's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained in and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter. *Ettlinger v. FBI*, 596 F. Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dept. of Justice*, 19 F.3d 807, 815 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban Dev.*, 405 F. Supp.2d 553, 557 (E.D. Pa. 2005) (in granting fee waiver to community legal group, court noted that while the requester's "work by its nature is unlikely to reach a very general audience," "there

---

[1] *See* **https://www.whitehouse.gov/lab-leak-true-origins-of-covid-19/**

is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate the requested records, which are not currently in the public domain. *See Cmty. Legal Servs.*, 405 F. Supp.2d at 560
(because requested records "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations... ."1[1]

Disclosure of these records is not only "likely to contribute," but is certain to contribute to public understanding of the Bush Administration's activities toward sabotaging global bioweapons oversight, opening up unregulated risky research for decades to come. The public is always well served when it knows how the government conducts its activities, particularly matters touching on legal questions. Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about this pressing issue.

**II. Disclosure is Likely to Contribute Significantly to Public Understanding of Government Operations or Activities.**

U.S. Right to Know is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of what actions were undertaken by the Bush Administration to avert oversight of biological weapons development, as compared to the level of public understanding that existed before the disclosure. Such public transparency of agency action is vital to our democratic system and envisioned by the drafters of the FOIA. Thus, U.S. Right to Know meets this factor as well.

**III. Obtaining the Requested Records is of No Commercial Interest to U.S. Right to Know**

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to U.S. Right to Know's role of educating the general public. Founded in 2014, U.S. Right to Know is a 501(c)(3) nonprofit public interest, public health organization (EIN: 46-5676616). U.S. Right to Know has no commercial interest and will realize no commercial benefit from the release of the requested records.

**IV. U.S. Right to Know's Primary Interest in Disclosure is the Public Interest**

As stated above, U.S. Right to Know has no commercial interest that would be furthered by disclosure. Although even if it did have an interest, the public interest would far outweigh any pecuniary interest.[2]

U.S. Right to Know is a non-profit organization that informs, educates, and counsels the public regarding corporate wrongdoing and government failures that threaten our food system, our environment, and our health. U.S. Right to Know has been substantially involved in the activities of numerous government agencies for over ten years and has consistently displayed its ability to disseminate information granted to it through FOIA.

In granting U.S. Right to Know's fee waivers, agencies have recognized: (1) that the information requested by U.S. Right to Know contributes significantly to the public's understanding of the government's operations or activities; (2) that the information enhances the public's understanding to a greater degree than currently exists; (3) that U.S. Right to Know possesses the expertise to explain the requested information to the public; (4) that U.S. Right to Know possesses the ability to disseminate the requested information to the general public; (5) and that the news media recognizes U.S. Right to Know as an established expert in the field of public health. U.S. Right to Know's track record of active participation in oversight of governmental activities and decision making, and its consistent contribution to the public's understanding of those activities as compared to the level of public understanding before disclosure are well established.

U.S. Right to Know intends to use the records requested here similarly. U.S. Right to Know's work appears frequently in news stories online and in print, radio, and TV, including reporting in outlets such as *The New York Times* and *The Guardian*, as well as medical and public health journals such as the *BMJ*. Many media outlets have reported on the food and chemical industries using information obtained by U.S. Right to Know from federal agencies. In 2024, more than 320,000 people visited U.S. Right to Know's extensive website and viewed pages more than 550,000 times. U.S. Right to Know and its staff regularly tweet to a combined following of 55,000 on X (formerly Twitter), and more than 10,000 people follow U.S. Right to Know on Facebook. U.S. Right to Know has more than 17,000 subscribers to its newsletter. U.S. Right to Know intends to use any or all of these distribution channels to share with the public information obtained as a result of this request.

---

[2] In this connection, it is immaterial whether any portion of U.S. Right to Know's request may currently be in the public domain because U.S. Right to Know requests considerably more than any piece of information that may currently be available to other individuals. *See Judicial Watch*, 326 F.3d at 1315.

7

Public oversight and enhanced understanding of the Bush Administration's actions related to the BWC verification protocol are necessary. In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject. *Carney*, 19 F.3d 807. U.S. Right to Know need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity." *Judicial Watch*, 326 F.3d at 1314. It is sufficient for U.S. Right to Know to show how it distributes information to the public generally. *Id.*

We certify that the information given above to support our request is true and correct, to the best of our knowledge.

Please send the documents electronically in PDF format to Lewis Kamb at lewis@usrtk.org. If you need additional information, please call, rather than write, Lewis Kamb at (206) 735-6299.

Thank you so much for your help in filling this request.

Sincerely,

Lewis Kamb
Investigative Reporter

Hana Mensendiek
Investigator

Gary Ruskin
Executive Director